FILED
 2009 Jun-12 PM 12:19
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# EXHIBIT B

# LEGAL EXPERT OPINION
# OF PEDRO R. LAFONT PIANETTA

## I.- GENERALITIES

1.- Addressee
2.- Sender
3.- Subject
4.- Date

## II.- EXPERT OPINION REQUEST

5.- Background
6.- Request

## III.- EXPERT OPINION

7.- Expert Opinion Scope
8.- First Question
   8.1.- Regulations applicable to the subject at hand
   8.2.- Doctrinal and Jurisprudential Argumentation
      8.2.1.-   Legitimacy to Sue
      8.2.2.-   Colombian Jurisprudence and Doctrine
9.- Conclusion (Final Expert Opinion)

## LEGAL EXPERT OPINION

### I.- GENERALITIES

| | |
|---|---|
| 1.- TO: | TERRY COLLINGSWORTH, LEAD COUNSEL IN THE CASE OF THE OFFSPRING OF VALMORE LOCARNO, VICTOR ORCASITA, AND GUSTAVO SOLER AGAINST DRUMMOND. |
| 2.- FROM: | PEDRO R. LAFONT PIANETTA, EXPERT COUNSEL, FORMER JUDGE OF THE SUPREME COURT OF JUSTICE OF COLOMBIA. UNIVERSITY PROFESSOR AND WRITER ON MATTERS OF PRIVATE LAW. |
| 3.- SUBJECT: | REQUEST FOR A LEGAL EXPERT OPINION ON THE ACTION FILED BY THE OFFSPRING OF V. LOCARNO, V. ORCASITA, AND G. SOLER AGAINST DRUMMOND FILED ON MARCH 20, 2009 AT THE COURT OF ALABAMA (USA). |
| 4.- DATE: | APRIL 23, 2009. |

### II.- REQUEST FOR AN EXPERT OPINION

**5.- BACKGROUND**.- I have been informed that the case filed against Drummond by the three widows of the union members: Valmore Locarno, Víctor Orcasita, and Gustavo Soler, who were tortured, kidnapped, and murdered by the AUC, has failed before the Judge and Court of the State of Alabama (on account of the impossibility of witnesses appearing before the Court). Subsequently, a new action was filed (on March 20, 2009) by the offspring of the said deceased persons against the same company (i.e., DRUMMOND) seeking that it be declared responsible and sentenced to payment of the relevant damages.

**6.- REQUEST**.- Based on the above, the following expert opinion was requested: In accordance with Colombian Law, can the offspring of a deceased person sue the party responsible for the death for damages, in order to obtain the reparation of those damages?

## III.- EXPERT OPINION

**7.- SCOPE OF THE EXPERT OPINION**.- First, it is important to specify that what is being requested here has to do with an eventual **liability in tort** of a particular Entity (Drummond) and is solely and exclusively circumscribed, on the one hand, to the determination of the *legitimatio ad causem*, that is, to the determination of the power of the offspring to sue for liability and damages in accordance with Colombian law; and, on the other hand, to the determination of the exercise of the action, that is, the existence or not of a **legitimacy to act** and to claim for the issue to be judged. Therefore, we will limit ourselves to express our opinion on the said items.

**8.- QUESTION:** Under the Colombian law, **can the offspring sue for liability and for damages for the death of their father? The answer is affirmative,** in the sense that the offspring by themselves and independently from their mother may sue the responsible party for the relevant damages.

   **8.1.- REGULATIONS APPLICABLE TO THE CASE AT HAND**.- The possibility of an action being filed by the offspring seeking a particular entity, such as DRUMMOND, to be pronounced liable lies on the following: On the one hand, on a prevalent application of the Colombian Constitution in the national territory (Article 4º.), by virtue of which "private entities….are liable….for any violation to the Constitution and the Law…."; and, on the other hand, that in accordance with the Colombian Codes, although "actions can (may) only be initiated through a party's lawsuit" (Art. 2º. Paragraph 1º of the Colombian Civil Procedure Code), the legitimacy to act as a plaintiff corresponds to the party **who has sustained the damages,** and this comprises the offspring (as will be noted below), and the burden to claim the damages in the case of the defendant, corresponds to the party that caused the damage. Now, this claim can also be made in connection with the corresponding criminal action, with no obligation to do so, due to its facultative or discretional nature (Arts.23 and 45 Law 975 of 2005; and 102 and ss. of Law 906 of 2004).

   Now, when the damages are personal, the **personal action** in favor of the injured party established by Article 2341 of the Colombian Civil Code provides: "The perpetrator of a crime, who has caused **damages to another person**, is obliged to indemnify, without prejudice of the main penalty imposed by the law on account of the perpetrated fault or crime". In contrast, when the damage to the victim has originated an action of reparation in his/her favor and this action is transmitted to his/her beneficiary, such an **action pertains to the beneficiary** because it is a "transmissible right" by cause of death (Art. 1008 of the Col. Civ. Code), which may only be exercised by the "heirs" because only they "represent the testator (or decedent) to succeed him/her in all its transmissible rights and obligations" (Art.1155, inc. 1º., Col. Civ. Code), which, for the issue at hand, are the offspring, taking into account that "the legitimate, adoptive and extra matrimonial offspring **exclude all other heirs** and will receive equal quotas, without prejudice of the conjugal position" (Art. 1045 C.C. and Art. 4º. Law 28 of 1992).

**8.2.- DOCTRINAL AND JURISPRUDENTIAL ARGUMENTATION**.- In accordance with the above, **the doctrine and jurisprudence** in Colombia is unanimous in the sense that "the offspring of a deceased person" may act as plaintiff in a complaint to seek liability of the defendant and damages suffered due to the violation of rights that usually resulted in the victim's death.

**8.2.1.- LEGITIMACY TO SUE**.- The Colombian legal system not only directly guarantees the rights of the persons, especially those of liberty, integrity, dignity and life (Arts. 13, 12, 1º. and 11 of the Colombian Political Constitution; Art. 1º. and ss. of Law 70 of 1986 in the convention against torture and other cruel, inhumane, and degrading treatments or punishments; Art. 5º. of Law 16 of 1972 on the Convention in Human Rights; and Art. 7º. of Law 74 of 1968 on the International Agreement on Civil and Political Rights), which are obviously violated in cases of kidnapping, torture, and murder; but also the rights of the relatives, a fundamental element of the society, which are affected as such (Art. 5º., 2º. Political Constitution; Art. 23 of the International Agreement on Civil and Political Rights; Art. 10 of the International Agreement on Economic and Cultural Rights; and Arts. 11 and 17 of the San José de Costa Rica Agreement, etc.), and the rights associated with the moral integrity, familial dignity, feeding, and assistance, etc., which are also indirectly affected in any violation of those rights (Art. 95 Pol. Const. and Art. 32 San José de Costa Rica Agreement).

However, in order to **determine who may sue for damages and how**, it is indispensable to establish the potential damages and who is the party that suffers the consequences, which will be explained in more detail hereinafter.

To begin with, the main classes of damages should be outlined, as follows: **Moral damages,** occurring when the injured moral rights are the affliction and pain caused by death, how it happened and its background (**subjective moral damages**) (Sentence of the Supreme Court, May 11, 1976), that should not only be taken into account in order to establish the scope of the damage (e.g. suppression of freedom, attempt against the dignity and suppression of life), but whose existence is also assumed in the persons, such as the offspring, who have a proximity of kinship with the decedent (Sent. of the Supreme Court, November 24, 1992); and also when the damages are a consequence of the said affliction, such as those caused to the work-related activity or to the patrimonial administration (**objectified moral damages**). Other **immaterial damages**, such as those sustained by the **life in common,** may be suffered by the offspring, that is, those damages that prevent them from developing normal social activities (Sent. of the Supreme Court, May 13, 2008). And, finally, other damages may be material in nature (**material damages**), such as those sustained by the offspring in their wealth, mainly those damages that, by

reason of the economic dependence on the father, result in income ceasing to be received due to the father's death (Sent. of the Supreme Court, September 12, 1996).

In the second place, it should be remarked that **the death of a person not only affects the victim, but also other persons**. This is due to the fact that any death not only causes **direct damages** to the victim (namely, the deceased), but also causes indirect damages to other persons; among which are his wife and offspring. However, these subjects may become affected **in two ways**, because they may be injured both in their personal or own rights, and in their hereditary rights, in which case, as damaged parties, they should exercise the personal actions in the first case, whereas they should exercise the hereditary actions in the second case. In fact, the damages that may be inflicted, individually and separately to the wife and offspring, may affect their **own rights**, that is, those pertaining to the offspring and wives, in their capacity as **persons and relatives**, as well as their **hereditary rights**, that is, those pertaining to them not as relatives but as **heirs.** For this reason, the wife and the offspring may be individually and separately affected both in **their own rights**, either personal (e.g. rights relative to affection, dignity and moral patrimony) or economic (as in the case of the assistance no longer received), and **also** in their other **hereditary rights**. But, in the first case, the offspring and the wife may exercise individually a personal action, in order to, as an affected relative and not as a heir, claim the corresponding damages from the liable party; whereas the second case would only arise in cases where the death did not occur initially, and an action for reparation or damages was entered in favor of the tortured or kidnapped person, who later died for other cause and with his/her death transmitted such rights to the heirs, in which event **the reparation could only be claimed by the heirs, among which, in this particular hypothesis, would also be the offspring as sole heirs to the decedent (Art. 4º. of Law 29 of 1982) with exclusion of the spouses or widows of the decedents.**

**8.2.2.-** **Colombian Jurisprudence and Doctrine**.- This has been stated as follows by the Honorable Supreme Court of Justice of Colombia: "Not only the immediate or direct victim has legitimacy to sue, based on his/her own damage, but also by their having interests or sufficient legal right, such as other persons who indirectly or as a consequence may become deprived from certain rights or economic assistance or suffer moral damages, may claim immediate or indirect damages. This is **what happens when the father is injured and disabled and as a consequence the wife and offspring are deprived of the appropriate assistance and food, this same fact inflicts moral damages upon them**…. in the event that the direct victim of the damages, that is, the injured person, dies at a later time, **the indirect victim is also not required to be an heir**, because the indirect victim generally claims the reparation of the damages by *jure proprio* and not by *iure hereditario*.

**Only exceptionally, can the indirect victim claim damages as an heir**, which occurs with the damages received by the direct victim before dying and later transmitted to his or her heirs on account of his demise, such as the debt derived from nursing, hospital, and medical expenses, and drugs acquired by the victim before her or his death. These material damages, since they are transmissible, should be claimed by the respective heirs of the deceased victim" (Sent. of the Civil Cassation Chamber of the Supreme Court, April 8th 1980).

On the other hand, the **general doctrine**, both foreign and Colombian, has concurred with the above. Thus, for the Colombian doctrine, **Arturo Valencia Zea** has stated, on the one hand, that "the damages caused to the right to a person result, first, in a decrease or depletion of other patrimonial rights pertaining to the victim or to third parties", and second, that pain itself can also cause "damages", which are respectively called "**objective moral damages**" and "**subjective moral damages**", and that are measurable by "the value that particular life had for others (the offspring, the wife, etc." (Civil Law. Volume III Ed. Temis Bogotá. 1960. No.129). Besides, the cited author also recognizes that the offspring are also entitled to **material damages** with respect to the financial aid obtained from their "father or mother" (Ob. cit. No.113). Similarly, **Alvaro Pérez Vives** has stated that in case of death "the **directly injured parties** have the right, the title, and the action to claim or sue for damages.... and so it is not necessary for them to enforce those rights through a succession or the dissolution of a corporation" (Sent. of the Supreme Court, June 24th 1942. Alvaro Pérez Vives. Teoría General de las Obligaciones. Ed. Temis. Bogotá. 1954. VolumeII No. 233), in which case they may claim moral damages caused by the injury to "the rights inherent to the personality and the rights resulting from certain civil qualities (such as the **statuses of father, husband**, relative, and, in general, the rights of the family", as well as the material damages, as "the lack of profit or benefit reported by the damaged party in the guilty act" (Ibidem No. 205). I have stated the same when I have said that the "damaged parties" have "legitimacy" to sue the direct or indirect responsible party, as the case may be (**Lafont P. Pedro** Derecho Privado Contemporáneo. Librería del Profesional. Bogotá. 2006. Page. 421 and ss.).

7

**9.- CONCLUSION (FINAL EXPERT OPINION**).- Then, according to the Colombian law the offspring are entitled to sue for the corresponding damages, either as parties indirectly affected by the death of their respective parents, as well as the widows, or sue as the exclusive heirs, with the exclusion of the widows, having the right to claim the monetary compensation that the victim would have acquired prior to his/her death and upon the victim's death would have been transferred to them [the children].

[signature]

_____
**PEDRO R. LAFONT PIANETTA**
**C.C. No. 17,177,039 of Bogotá.**
**Attorney at Law**

## CERTIFICATE OF ACCURACY

I, <u>Luis E. Tellez</u>, swear under penalty of perjury that I am fluent in both English and Spanish and that the translation of the attached document "Experticio Juridico" is true and correct.

_____
Signature

June 9, 2009

# EXPERTICIO JURIDICO
# DEL SR. PEDRO R. LAFONT PIANETTA

## I.- GENERALIDADES

1.- Destinatario
2.- Remitente
3.- Asunto
4.- Fecha

## II.- SOLICITUD DE EXPERTICIO

5.- Antecedentes
6.- Solicitud

## III.- EXPERTICIO

7.- Alcance del experticio
8.- Primera pregunta
   8.1.- Normatividad aplicable al asunto preguntado
   8.2.- Argumentación doctrinal y jurisprudencial
       8.2.1.- Legitimados para demandar
       8.2.2.- Jurisprudencia y Doctrina Colombiana
9.- Conclusión (Experticio final)

## EXPERTICIO JURIDICO

## I.- GENERALIDADES

| | |
|---|---|
| 1.- PARA: | TERRY COLLINGSWORTH. ABOGADO PRINCIPAL DEL CASO DE LOS HIJOS DE VALMORE LOCARNO, VICTOR ORCASITA Y GUSTAVO SOLER CONTRA DRUMMOND. |
| 2.- DE: | PEDRO R. LAFONT PIANETTA. ABOGADO EXPERTO. EX-MAGISTRADO CORTE SUPREMA DE JUSTICIA DE COLOMBIA. PROFESOR UNIVERSITARIO Y TRATADISTA DE DERECHO PRIVADO. |
| 3.- ASUNTO: | SOLICITUD DE EXPERTICIO JURIDICO EN ASUNTO DE HIJOS DE V.LOCARNO, V.ORCASITA Y G.SOLER VS. DRUMMOND PRESENTADO EL 20 DE MARZO DE 2009 Y QUE, EN SU CASO, SERÁ ENJUICIADO ANTE EL TRIBUNAL DE ALABAMA (E.E.U.U.). |
| 4.- FECHA: | 23 DE ABRIL DE 2009. |

## II.- SOLICITUD DE EXPERTICIO

**5.- ANTECEDENTES**.- Se me ha señalado que después de no haber tenido éxito ante el Juez y el Tribunal del Estado de Alabama (por imposibilidad de comparecencia de los testigos), un proceso adelantado contra la Empresa Drummond, por las tres viudas de los sindicalistas Valmore Locarno, Víctor Orcasita y Gustavo Soler, torturados, secuestrados y asesinados por la AUC, posteriormente (el 20 de marzo de 2009), se ha presentado por los hijos de dichos fallecidos una demanda contra la misma Empresa DRUMMOND para que se declare responsable y se le condene al pago de los perjuicios del caso.

**6.- SOLICITUD**.- Con base en lo anterior, se solicitó el siguiente experticio: De acuerdo con la ley colombiana los hijos de una persona fallecida pueden demandar al responsable de muerte, a fin de obtener la reparación de los perjuicios sufridos?

### III.- EXPERTICIO

**7.- ALCANCE DEL EXPERTICIO**.- En primer lugar, hay que precisar que lo solicitado versa sobre una eventual **responsabilidad extracontractual** de una Entidad particular (Drummond) y se circunscribe única y exclusivamente, de un lado, a la determinación de **la legitimatio ad causam**, esto es, a la determinación de la potestad de los hijos para demandar la responsabilidad e indemnización de perjuicios de acuerdo con el derecho colombiano; y, de la otra, en la determinación del ejercicio de la actio, es decir, en la existencia o no del **poder para accionar** y reclamar que se juzgue dicho asunto. Por esta razón, nos limitaremos a expresar nuestro dictamen sobre dichos puntos.

**8.- PREGUNTA:** De acuerdo con la legislación colombiana **pueden los hijos demandar la responsabilidad e indemnización de perjuicios ocasionados por la muerte de su padre? La respuesta es afirmativa,** en el sentido de que los hijos por sí solos e independientemente de su madre, pueden demandar al responsable para reclamar la indemnización de perjuicios que les corresponde.

   **8.1.- NORMATIVIDAD APLICABLE AL ASUNTO PREGUNTADO**.- La posibilidad de demanda por los hijos para exigir responsabilidad de una entidad particular, como la DRUMMOND, descansa: De una parte, en aplicación prevalente de la Carta Política Colombiana en el territorio colombiano (Artículo 4º.), en virtud de la cual "los particulares…. son responsables…. por infringir la Constitución y la ley….";  y, de la otra, en que de acuerdo con los Códigos Colombianos, si bien "los procesos solo pueden ("podrán") iniciarse por demanda de parte" (Art. 2º. Inciso 1º. del Código de Procedimiento Civil Col.), la facultad para obrar como demandante corresponde a quien **ha sufrido un daño,** dentro de los cuales están, los hijos (como se verá más adelante), y la carga para reclamársela como demandado, la indemnización del caso, corresponde parte que inferido el daño. Ahora, esa reclamación también puede hacerse dentro del proceso penal correspondiente, sin que sea obligatorio hacerlo dentro de este, debido a su carácter facultativo o discrecional (Arts.23 y 45 ley 975 de 2005; y 102 y ss. de la ley 906 de 2004).

   Ahora, cuando el daño es personal, la **acción personal** en favor del perjudicado la establece el artículo 2341 del Código Civil Colombiano, cuando prescribe: "El que ha cometido un delito o culpa, que ha inferido **daño a otro**, es obligado a la indemnización, sin perjuicio de la pena principal que la ley imponga para la culpa o el delito cometido". En cambio, cuando el daño a la víctima originó en su favor una acción de reparación y esta se trasmitió a su herencia, dicha **acción pertenece a la herencia** por ser un "derecho trasmisible" por causa de muerte (Art. 1008 del Cod. Civ. Col.), que solo puede ser ejercida por los "herederos" porque solo éstos "representan al testador (o causante) para sucederle en todos sus derechos y obligaciones transmisibles" (Art.1155, inc. 1º., C.C. Col.), que, en el asunto preguntado, son los hijos, teniendo en cuenta que "los hijos legítimos, adoptivos y extra matrimoniales, **excluyen a todos los otros herederos** y recibirán entre ellos

iguales cuotas, sin perjuicio de la posición conyugal" (Art. 1045 C.C. y Art. 4º. Ley 28 de 1992).

**8.2.- ARGUMENTACION DOCTRINAL Y JURISPRUDENCIAL**.- De acuerdo con los anteriores preceptos, en Colombia, es **unánime la doctrina y la jurisprudencia** en el sentido de que "los hijos de una persona fallecida" pueden obrar como demandantes para reclamar la declaración de responsabilidad e indemnización de los perjuicios que han sufrido, debido a la lesión de los derechos que usualmente le ocasiona la muerte.

**8.2.1.- LEGITIMADOS PARA DEMANDAR**.- El ordenamiento jurídico colombiano no solo garantiza directamente los derechos de las personas, especialmente los de libertad, integridad, dignidad y vida (Arts. 13, 12, 1º. y 11 de la Const. Pol.Col.; Art. 1º. y ss. de la ley 70 de 1986 sobre convención contra la tortura y otros tratos o penas crueles e inhumanos o degradantes; Art. 5º. de la ley 16 de 1972 sobre la Convención de Derechos Humanos; y el Art. 7º. de la Ley 74 de 1968 sobre Pacto Internacional de Derechos Civiles y Políticos), que lógicamente se vulneran cuando hay secuestro, tortura y muerte; sino también el derecho de los familiares, elemento fundamental de la sociedad, que como tales se ven afectados (Art. 5º., 2º. C.Pol.; Art. 23 del Pacto Internacional de los Derechos Civiles y Políticos; el Art. 10 del Pacto Internacional de Derechos Económicos y Culturales; y Arts. 11 y 17 del Pacto de San José de Costa Rica, etc.), como los derechos relativos a la integridad moral, la dignidad familiar, la alimentación y ayuda, etc., que también se vean lesionados indirectamente como violación del respeto de aquellos derechos (Art. 95 Const. Pol. y Art. 32 Pacto de San José de Costa Rica).

Sin embargo, para **determinar quienes pueden demandar y la forma de como pueden reclamar una indemnización de perjuicios**, se hace imprescriptible establecer cuales son los daños posibles y quienes los sufren, lo que a continuación se precisa.

En primer lugar, hay que señalar que las principales clases de daños, son las siguientes: Unos de **carácter moral,** lo que ocurre cuando los derechos morales lesionados son las aflicciones y dolor que les causa la muerte, la forma como se produjo y sus antecedentes (**daño moral subjetivo**) (Sent. de la Corte Suprema del 11 de mayo de 1976), que no solo deben tenerse en cuenta para establecer el alcance de la lesión (v.gr. supresión de la libertad, atentado contra la dignidad y supresión de la vida), sino que también suelen presumirse su existencia en las personas, como los hijos, que tienen proximidad de parentesco con el causante (Sent. de la Corte Suprema de 24 de noviembre de 1992); y también cuando los daños son consecuencia de la mencionada aflicción, como aquellos que se causan en la actividad laboral o en la administración patrimonial (**daño moral objetivado**), Otros daños **pueden ser inmateriales**, como los daños en la **vida de relación,** que pueden sufrir

los hijos, esto es, aquellos que les impiden el desarrollo de las normales actividades sociales (Sent. de la Corte Suprema del 13 de mayo de 2008). Y finalmente, otros daños, pueden ser materiales (**daños materiales**), como serían aquellos que sufren los hijos en sus patrimonios, principalmente en los daños consistentes en lo que, por razón de la dependencia económica con el padre, deban de dejar de percibir ingresos ciertos por la muerte de aquel (Sent. de la Corte Suprema del 12 de sept. de 1996).

En segundo lugar, también debe destacarse que **los perjudicados con una muerte, no solo son las víctimas, sino también otras personas**. Todo ello obedece a que toda muerte no solo causa **daño directo** a la víctima (al fallecido), sino también indirecto a otras personas, dentro de los cuales se encuentra su esposa e hijos. Sin embargo, estos sujetos pueden verse afectados **de doble manera**, porque pueden verse lesionados tanto sus derechos personales o propios, como en sus derechos hereditarios, casos en los cuales, como perjudicados, deben ejercer las acciones personales en el primer caso, en tanto que deben ejercer las acciones hereditarias en el segundo. En efecto, los daños que pueden causarse, individual e independientemente a esposa e hijos, pueden afectar sus **derechos propios**, esto es, aquellos que les pertenecen a los hijos y esposas, en su carácter de **personas y familiares**, así como también pueden afectar sus derechos hereditarios, esto es, aquellos que le pertenecen no como familiares sino **como herederos.** Por esa razón, la esposa y los hijos pueden verse individual e independientemente afectados tanto en **sus derechos propios**, sean personales (v.gr. derechos relativos al afecto, a la dignidad y al patrimonio moral) o económicos (como las ayudas que deja de percibir), como **también** en sus otros **derechos hereditarios**. Pero en el primer caso, los hijos y la esposa pueden ejercer individualmente una acción personal o propia, para que, como familiar afectado y no como herederos, puedan reclamar del responsable la indemnización de perjuicios correspondiente; en tanto que el segundo caso, solo se daría cuando sin haberse ocasionado inicialmente la muerte, la acción de reparación o indemnización que había adquirido y tenía el secuestrado o torturado, la hubiese trasmitido a sus herederos con su muerte posterior, por otra causa, evento en el cual **dicha reparación solamente la podrían reclamar sus herederos, dentro de los cuales, en esta hipótesis, también estarían los hijos como únicos herederos del causante (Art. 4º. de la ley 29 de 1982) con exclusión de los cónyuges o viudas de los causantes.**

**8.2.2.- JURISPRUDENCIA Y DOCTRINA COLOMBIANA**.-   Así lo dice la Honorable Corte Suprema de Justicia de Colombianos cuando expresa que "no solo se encuentra legitimado para reclamar la correspondiente indemnización, basada en su propio perjuicio, la víctima inmediata o directa, sino también por tener intereses o la suficiente titularidad, pueden reclamar indemnización mediata o indirecta como ocurre con todas

aquellas personas que de rebote o por contragolpe se ven privadas de ciertos derechos ayudas económicas o sufren daño moral. **Es lo que acontece cuando el padre es lesionado e incapacitado y con tal hecho se priva a su esposa e hijos de la adecuada asistencia a protección alimentaria el mismo hecho les produce daño moral**…. En el evento en que la víctima directa del daño, o sea el lesionado fallezca posteriormente, **tampoco se requiere que la víctima indirecta tenga la calidad de heredero**, a virtud de que esta generalmente reclama la reparación del perjuicio jure propio ni iure hereditario. **Solo excepcionalmente, puede y debe reclamar como heredero la indemnización del perjuicio**, lo cual ocurre con los que reciba la víctima directa antes de su fallecimiento y que por su deceso posterior le trasmitió a sus herederos, como el crédito derivado de los gastos de enfermedad- clínicos, médicos, drogas que hizo la víctima antes de producirse su deceso. Estos perjuicios materiales, por ser trasmisibles, deben ser reclamados por los respectivos herederos de la víctima que fallece" (Corte Suprema. Sent. de la Sala de Casación Civil del 8 de abril de 1980).

De otra parte, en el mismo sentido mencionado se ha expresado la **doctrina en general**, tanto extranjera como colombiana. Así, dentro de esta última **Arturo Valencia Zea** reconoció, de un lado, que "el daño causado a un derecho de la personalidad se traduce, en primer lugar, en una disminución o merma de los otros derechos patrimoniales de la víctima o de terceros", y en segundo lugar, que el dolor también suele ocasionar el "perjuicio", los cuales son llamados respectivamente "**daño moral objetivo**" y "**daño moral subjetivo**", y que son cuantificables, por "el valor que tenía para extraños esa vida (los hijos, la esposa, etc." (Derecho Civil. Tomo III Ed. Temis Bogotá. 1960. No.129). De otro lado, el autor citado, también reconoce que quien también puede reclamar indemnización por **daño material** son los hijos respecto de la ayuda económica que obtenían de su "padre o madre" (Ob. cit. No.113). De igual manera **Alvaro Pérez Vives** señala que en caso de muerte "tiene derecho, la personería, la acción para reclamar o pedir la indemnización de perjuicios…. **los directamente perjudicados** y entonces no es necesario hacerla valer a través de una sucesión o de una sociedad disuelta" (Sent. de la Corte Suprema del 24 de junio de 1942. Alvaro Pérez Vives. Teoría General de las Obligaciones. Ed. Temis. Bogotá. 1954. Tomo II No.233), caso en el cual puede reclamar el resarcimiento del daño moral por la lesión que se hace a "los derechos inherentes a la personalidad a los derechos resultantes de ciertas calidades civiles (como **los estados de padre, esposo**, pariente y en general los derechos de familia", así como el daño material, como "la falta de utilidad o beneficio que en el acto culposo habría reportado el perjudicado" (Ibídem No. 205). En el mismo sentido, lo hemos expuesto nosotros, cuando hemos afirmado que son los "perjudicados" son "los legitimados" para accionar contra el responsable directo o indirecto, según el caso (**Lafont P. Pedro**

>Derecho Privado Contemporáneo. Librería del Profesional. Bogotá. 2006. Pag. 421 y ss.).

**9.- CONCLUSIÓN (EXPERTICIO FINAL).-** Luego, conforme al derecho colombiano los hijos gozan de la facultad para reclamar la indemnización correspondiente, bien sea como afectados indirectos con la muerte de sus respectivos padres, al igual que las viudas de estos, o bien para reclamar como herederos exclusivos, con exclusión de las viudas, el derecho a la indemnización que había adquirido en vida el causante y que con su muerte posterior le hubiere transferido a aquellos.

PEDRO R. LAFONT PIANETTA
C.C. No. 17.177.039 de Bogotá.
Abogado