# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **FREDDY LOCARNO BALOCO, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: **7:09-CV-00557-RDP** |
| } | |
| **DRUMMOND COMPANY, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

The court has before it the May 13, 2009 motion of Defendants Drummond Company Inc. ("DCI"), Drummond Ltd. ("DLTD"), and Augusto Jiminez ("Jiminez"),[1] to dismiss the complaint (Doc. #15). Pursuant to the court's orders of May 15, 2009, May 19, 2009, and May 22, 2009, the motion to dismiss (Doc. #15) is now under submission and is considered herein without oral argument.

Having considered the briefs and evidentiary submissions, the court finds that the motion to dismiss is due to be granted for the reasons outlined below.

**I.   Relevant Procedural History and Facts**

Plaintiff Baloco and eight (8) others, either in their own right or through their mothers as guardians of minors, commenced this action on March 20, 2009 by filing a complaint (Doc. #1) in

---

[1] Defendant Alfredo Araujo has separately moved to quash service (Doc. #14) and does not join in the motion to dismiss the complaint. Although provided ample opportunity to respond to the motion to quash, (*see* Doc. #19 and Orders of May 19, 2009 and May 22, 2009), Plaintiffs merely note in footnote 1 of their opposition to the corrected motion to dismiss (Doc. #23) that they "will re-serve Araujo." Because the motion to dismiss is due to be granted in its entirety, the motion to quash (Doc. #14) is **MOOT.**

this court for equitable relief and damage under the Alien Torts Claims Act ("ATS"), Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, and Colombian wrongful death law. (*See generally* Complaint) ("Compl."). Plaintiffs allege that they are children of Valmore Locarno ("Locarno"), Victor Hugo Orcasita ("Orcasita"), or Gustavo Soler ("Soler"), who were murdered in Colombia in 2001, allegedly by paramilitaries acting as agents of, or aided and abetted by, Defendants DCI, DLTD, Augusto Jiminez (president of DLTD's Colombia branch), and Alfredo Araujo[2] (an employee of DCI). Indeed the allegations contained in the complaint are troubling:

> A long history of trade union violence exists in Colombia. (Compl. at ¶ 2). Shortly after the Drummond employees in Colombia successfully organized a trade union, Defendant Alfredo Araujo met with leaders of the AUC,[3] including Northern Block leader Jorge Cuarenta ("Jorge 40") and his representatives to arrange for the AUC to eradicate the union through violent means. (Compl. ¶ 42). Drummond paid the AUC to carry out the destruction of the union, including the murders of Locarno, Orcasita, and Soler. (Compl. ¶ 42).
> 
> At the time, Locarno and Orcasita, President and Vice President of the union, respectively, had been in negotiations with Drummond for a year on a new contract. (Compl. ¶ 43). In the course of negotiations, pamphlets were passed out around the company labeling the union a "guerilla union," and attacking Locarno and Orcasita as supporters of guerillas. (Compl. ¶ 43). In a letter to DLTD, Locarno asked for security protection from the death threats he had been receiving due to the pamphlets. His request was denied by DLTD's Senior Human Resources supervisor, Ricardo Urbina Aroca. (Compl. ¶ 43).
> 
> Locarno and Orcasita also expressed concerns for their safety to Garry Drummond and other representatives of Defendants. (Compl. ¶ 46). Their request was denied despite the fact that Colombia's secret service agency, the DAS, alerted Drummond that Locarno and Orcasita were at risk of assassination. (Compl. ¶ 46).
> 
> On March 12, 2001, Locarno and Orcasita were pulled off a Drummond company bus and murdered by paramilitaries of the AUC. (Compl. ¶ 49). On October 5, 2001, shortly after becoming the new president of the union, Soler was also murdered by paramilitaries of the AUC. (Compl. ¶ 53).

---

[2] *See* footnote 1, *supra*.

[3] The acronym AUC stands for Autodefenas Unidas de Colombia. The AUC is also commonly referred to as the paramilitaries.

This is not the first time such an action has been filed in the Northern District of Alabama. In *In re Juan Aquas Romero v. Drummond Co.*, CV-03-BE-575-W ("*Drummond I*") and consolidated cases filed in 2003, plaintiffs alleged claims under the ATS, TVPA, and Colombian common law for the murders of Locarno, Orcasita, and Soler based on the same general factual allegations. (*See* Doc. #15 at 3). Following extensive discovery, Judge Bowdre granted summary judgment in favor of DCI on the TVPA and wrongful death claims. A jury returned a verdict for DCI under the ATS claim for aiding and abetting the murderers. (*See* Doc. #15 at 3). The United States Court of Appeals for the Eleventh Circuit affirmed on December 22, 2008 in *Romero v. Drummond Co.*, 552 F.3d 1303 (11th Cir. 2008).

The instant action, *F.L.B. et al. v. Drummond Company, Inc. et al.*, is currently before the court on Defendants' motion to dismiss (Doc. #14).

## II.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 547 (2007). That is, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.*

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of

law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)).  Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967).  Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

**III.   Analysis**

Defendants base the current motion (Doc. #15) on four central arguments:  first, that the prior judgment in *Drummond I* precludes Plaintiffs from relitigating their claims; second, that issue preclusion requires dismissal of Plaintiffs' claims; third, that Plaintiffs lack standing to bring this action under the TVPA and/or the ATS; and fourth, that the court should decline supplemental jurisdiction over the Colombian wrongful death claim.  (*See* Doc. #15).  In the event this entire action is not dismissed, Defendants move to transfer venue to the Southern Division of the Northern

District of Alabama. (*See* Doc. #15 at 18-20).

On August 19, 2009 Defendant DCI, DLTD, and Augusto Jiminez[4] filed a notice of supplemental authority (Doc. #26) "to alert the court to the Eleventh Circuit's decision in *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL 2431463 (11th Cir. Aug. 11, 2009), in support of their Motion to Dismiss." (Doc. #26 at 1). Because Plaintiffs had ample opportunity to respond to the notice of supplemental authority, and did in fact oppose the applicability of *Sinaltrainal* to the instant case, (*see* Doc. #27), the possible grounds for dismissal presented by *Sinaltrainal* are also considered herein.

The court will address each of Defendants' arguments in turn.

    **A.**    **Res Judicata/Claim Preclusion**

Res judicata/claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit. In order for the doctrine to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits; (2) the decision must have been rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases. *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1984). The parties do not dispute that this is the standard that applies here. (*See* Doc. #15 at 5; *see also* Doc. #23 at 7). Further, there is no dispute that *Drummond I* rendered a final judgment on the merits by a court of competent jurisdiction. (*See* Doc. #15 at 5-7; *see also* Doc. #23 at 7-8). What is in dispute is whether the current Plaintiffs were parties to the previous *Drummond I* action, *see E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir.

---

[4] *See* footnote 1, *supra*.

2004) ("Simply put, before the doctrines of either res judicata or collateral estoppel may be asserted against a party, it must be established that the party in the second action was either a party in the previous action or a privy of the party in that action ... collateral estoppel can apply only when the parties are the same (or in privity) [and] if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding.") (internal citations and quotations omitted), and whether there have been significant factual developments to prevent the application of res judicata. Each of those contended grounds is considered below.

### 1.      The Identities of the Plaintiffs.

Plaintiffs in the instant case are children of Valmore Locarno Rodriquez, Victor Hugo Orcasita Amaya, and Gustavo Soler Mora., suing either by and through their mothers, or in their own capacities as adults. (Compl. ¶ 1). All of the current Plaintiffs allege that they were not parties to any prior legal action brought against the Drummond Defendants for the murder of their fathers. (Compl. ¶¶ 10-17).

In *Drummond I*, the Third Amended Complaint reveals that the plaintiffs were:

> legal heirs to Valmore Locarno Rodriguez (Locarno), Victor Hugo Orcasita Amaya (Orcasita), and Gustavo Soler Mora (Soler), three murdered trade union leaders, and plaintiff SINTRAMIENERGETICA, the trade union the murdered leaders served ...

(Doc. #15, Exh. D, ¶ 1).[5] Although further identification of the plaintiffs is not provided in the Third Amended Complaint, Judge Bowdre required[6] that plaintiffs file a "Notice of Identities" under seal

---

[5] Plaintiffs in the current case argue that the Third Amended Complaint in *Drummond I* "explicitly does not include . . . children as plaintiffs. Rather, it limits the plaintiffs therein solely to Jane Does I-IV in their individual capacities." (Doc. #23 at 9). That statement is simply disingenuous.

[6] The Notice of Identities was filed "pursuant to the April 15, 2004 bench ruling of [the Honorable] Karen O. Bowdre, who ordered Plaintiffs to set forth these identities **in a sealed**

for the purpose of informing the defendants of the true identities of the plaintiffs. Such Notice was filed on April 29, 2004, the same day the Third Amended Complaint was filed in that case. (*See* Doc. #15, Exh. D at 1). Because the Notice was filed contemporaneously with the Third Amended Complaint, pursuant to a specific court order which purpose was to allow defendants knowledge of the true identities of the plaintiffs, this court considers the Notice part and parcel of the Third Amended Complaint, and takes judicial notice of both.[7] *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) ( taking judicial notice of public documents is not inconsistent with Rule 12(b)(6)); *see also Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53-54 (11th Cir. 2006) (per curiam) (holding that a district court could take judicial notice of a filing in a separate case without converting a motion to dismiss into a motion for summary judgment).

Two things are clear from the side-by-side examination of the *Drummond I* complaint (considered in conjunction with the Notice) and the instant complaint: first, the plaintiffs in *Drummond I* were not merely "the wives of the murdered trade unionists, acting solely on their own behalf" as Plaintiffs here disingenuously contend, (*see* Doc. #23 at 8); and second, the evidence before the court is such that it can take judicial notice[8] that ***some*** of the Plaintiffs in the instant case are identical to, or in privity with, the *Drummond I* plaintiffs. (*See* Doc. #15 at 7-8 and n.6). The

---

**document**, separate and apart from the Complaint." (Doc. #16, Exh. A at 1) (emphasis in original).

[7] Plaintiffs have done nothing to suggest that it is inappropriate for this court to take judicial notice of the Third Amended Complaint or Notice of Identities filed in *Drummond I*. (*See* Doc. #23 at 8-10).

[8] The general rule is, as stated above, that on a motion to dismiss the court must accept the allegations of the complaint as true. One exception to that rule comes into play when the allegations of the complaint "run counter to facts of which the court can take judicial notice." *Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*, 519 F. Supp.2d 1195, 1208 (M.D. Fla. 2007) (quoting *Frenck v. Corr. Corp. of Am.*, 2006 WL 3147656, No. 8:06-cv-1534 at *2 (M.D. Fla. Nov. 1, 2006)).

following chart is helpful:

| Complaint in 7:09cv557 | Third Amended Complaint/Notice in 7:03cv575 |
|---|---|
| Freddy Locarno Baloco seeks damages for the death of his father, Locarno and brings this case through his mother, Yaneth Ester Baloco Tapia (Compl. ¶ 10). | Jane Doe II is "the children of Yaneth and Valmore" Locarno.  (Doc. #16, Exh. A, ¶ 3). |
| Katherine Paola Locarno Baloco seeks damages for the death of her father, Locarno, and brings this case through her mother, Yaneth Ester Baloco Tapia (Compl. ¶ 11). | Jane Doe II is "the children of Yaneth and Valmore" Locarno.  (Doc. #16, Exh. A, ¶ 3). |
| Ayleen Paoloa Orcasita Almarales seeks damages for the death of her father, Orcasita. (Compl. ¶ 12). | Jane Doe III is "the child of Nancy and Victor [Orcasita]."  (Doc. #16, Exh. A, ¶ 3). |
| Stefany Loren Orcasita Cordoba seeks damages for the death of her father, Orcasita. (Compl. ¶ 13). | Jane Doe III is "the child of Nancy and Victor [Orcasita]."  (Doc. #16, Exh. A, ¶ 3). |
| Marlon Alexi Orcasita Almarales seeks damages for the death of his father, Orcasita and brings this case through his mother, Elisa Almarales Viloria. (Compl. ¶ 14). | Jane Doe IV is "the three children of Elisa and Victor [Orcasita]."  (Doc. #16, Exh. A, ¶ 5). |
| Ashly Patricia Orcasita Almarales seeks damages for the death of her father, Orcasita and brings this case through her mother, Elisa Almarales Viloria. (Compl. ¶ 15). | Jane Doe IV is "the three children of Elisa and Victor [Orcasita]."  (Doc. #16, Exh. A, ¶ 5). |
| Sergio Esteban Soler Urrego seeks damages for the death of his father, Soler.  (Compl. ¶ 16). | Jane Doe V is "the two children of Nubian and Gustavo [Soler]."  (Doc. #16, Exh. A, ¶ 6). |
| Ingrid Karina Soler Urrego seeks damages for the death of her father, Soler and brings this case through her mother, Nubia Yolanda Urrego Urrea. (Compl. ¶ 17). | Jane Doe V is "the two children of Nubian and Gustavo [Soler]."  (Doc. #16, Exh. A, ¶ 6). |

Freddy Locarno Baloco and Katherine Paola Locarno Baloco are due to be dismissed from this action on res judicata grounds.  They are the children of Yaneth Ester Baloco Tapia and Valmore Locarno and were plaintiffs to *Drummond I* as "Jane Doe II."  Marlon Alexi Orcasita Almarales and

Ashly Patricia Orcasita Almarales are also due to be dismissed from this action on res judicata grounds. They are the children of Elisa Almarales Viloria and Victor Orcasita and were plaintiffs to *Drummond I* as "Jane Doe IV." Finally, Ingrid Karina Soler Urrego is due to be dismissed from this action on res judicata grounds. She is the child of Nubia Yolanda Urrego Urrea and Gustavo Soler and was a plaintiff to *Drummond I* as "Jane Doe V."

But Defendants have not established that three of the current Plaintiffs were also parties to the *Drummond I* action. While it is indeed possible that either Ayleen Paoloa Orcasita Almarales or Stefany Loren Orcasita Cordoba is "the child" contemplated by "Jane Doe III" in *Drummond* I, it is equally as possible that each was not. The family relationship of father-daughter as set out in the instant complaint is insufficient to provide the necessary identity of the parties.[9] Similarly, Sergio Esteban Soler Urrego was not clearly a party to the *Drummond I* action. That Sergio is the son of Soler is uncontested, but he is not necessarily the son of Nubia Yolanda Urrego Urrea.

Where there are no judicially noticed facts contrary to the allegations of the complaint, the court must accept, on a motion to dismiss, the allegations of the complaint as true. Therefore, the claims of Ayleen Paoloa Orcasita Almarales, Stefany Loren Orcasita Cordoba, and Sergio Esteban Soler Urrego survive the res judicata analysis.

---

[9] In so finding, the court does not foreclose the possibility that res judicata could apply to the claims of Ayleen Paoloa Orcasita Almarales and Stefany Loren Orcasita Cordoba. However, on the current motion to dismiss, it would be improper for this court to take judicial notice of testimony garnered from the depositions or trial in *Drummond I*. *See Bryant*, 187 F.3d at 1278 ("[W]e hold that a court, when considering a motion to dismiss . . . may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents . . .").

## 2. Factual Developments Since *Drummond I.*[10]

Freddy Locarno Baloco, Katherine Paola Locarno Baloco, Marlon Alexi Orcasita Almarales, Ashly Patricia Orcasita Almarales, and Ingrid Karina Soler Urrego next argue that their claims should be safe from dismissal, even considering the fact that they were parties to *Drummond I*, because there have been significant factual developments since *Drummond I* that were previously unknown to them. (*See* Doc. #23 at 13-15; *see also* Doc. #28). Specifically, Plaintiffs contend that there have been significant developments related to the Justice and Peace Process in Colombia "which has brought forth concrete evidence that the Drummond Defendants did pay the AUC to specifically murder Plaintiffs' fathers because of their union activities. These facts are legally significant and alter the foundation of Plaintiffs' case because the decision in *Drummond I* was based allegedly on a finding that plaintiffs could not prove that Defendants conspired to murder the decedents." (Doc. #23 at 14; *see also* Doc. #28 at 2-3). Therefore, Plaintiffs assert that the application of res judicata would be contrary to the remedial purpose of the ATS and TVPA. (*See* Doc. #23 at 14-15).

In determining whether to apply res judicata on the final of the four elements, the court must indeed "'look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action." *Southeast Florida Cable, Inc. v. Martin County, Fla.*, 173 F.3d 1332 (11th Cir. 1999) (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992) (additional citations omitted)). If there has been a "modification of significant

---

[10] Plaintiffs have not asked the *Drummond I* court to set aside the judgment because of newly discovered evidence. Federal Rule of Civil Procedure 60 does allow a court to set aside a judgment based on newly discovered evidence, but only if the motion is filed within one year of the district court judgment, regardless of appeal. *See Transit Cas. Co. v. Security Trust Co.*, 441 F.2d 788, 791 (5th Cir. 1971) ("[A]ppeal does not toll the time for making a 60(b) motion.").

facts creating new legal conditions, res judicata is no defense." *Southeast*, 173 F.3d at 1359 (internal citations and quotations omitted). That is, "[m]aterial operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." *Southeast*, 173 F.3d at 1336 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. f. (1980)).

The problem for Plaintiffs here is that while they may have recently become aware of new *evidence* supporting their claims, (*see generally* Doc. #28), that evidence was available at the time of *Drummond I*, just not known to the *Drummond I* plaintiffs. As such, there is no new factual situation which would allow this court to treat the current case as an entirely new cause of action separate and apart from *Drummond I*. *See Southeast*, 173 F.3d at 1336 ("[T]he factual premise of the present lawsuit differs significantly from the prior one . . . we cannot agree with the district court that the legal claims in the two suits arise from the same operative nucleus of fact.") (internal citations omitted); *see also Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 596 (7th Cir. 1986) (rejecting plaintiff's argument that res judicata should not bar claims based on facts which were unknown to the plaintiffs at the time of the previous action); *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir. 1992) ("new evidence of injury differs from a new wrong"); *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003) ("The fact that appellants' new evidence might change the outcome of the case does not affect application of claim preclusion doctrine.").

For the foregoing reasons, the doctrine of res judicata/claim preclusion bars Freddy Locarno Baloco, Katherine Paola Locarno Baloco, Marlon Alexi Orcasita Almarales, Ashly Patricia Orcasita

Almarales and Ingrid Karina Soler Urrego from pursuing their claims in this case.

### B. Issue Preclusion

For the same reasons outlined in the res judicata analysis, issue preclusion prohibits Freddy Locarno Baloco, Katherine Paola Locarno Baloco, Marlon Alexi Orcasita Almarales, Ashly Patricia Orcasita Almarales and Ingrid Karina Soler Urrego from pursuing their claims in this case.

### C. Standing

Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." Moreover, the court has an ongoing obligation to, sua sponte, analyze and determine whether it has before it a justiciable case or controversy. Whether a case or controversy exists turns on "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Wendy's Intern, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (quoting *Maryland Casualty Co. v. Pacific Oil Co.*, 312 U.S. 270, 273 (1941)).

As part of the case or controversy analysis, the court must evaluate a party's standing to bring a lawsuit. Standing is a snapshot of the justiciability of a plaintiff's claims at the time of filing. *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995). Standing requires, at an "irreducible minimum," that the plaintiff has an "actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995). Standing, therefore, emphasizes "whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties

having adverse legal interests.'" *Flast v. Cohen*, 392 U.S. 83, 100-101 (1968) (internal citations omitted). If a party lacks standing to bring a lawsuit, then the court lacks subject matter jurisdiction to hear the case, and the litigation is due to be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### 1.     The Torture Victims Protection Act

Enacted in 1992, the TVPA provides a cause of action for official torture and extrajudicial killing. *See Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1263 (11th Cir. 2009). The House Report sets out that the TVPA "authorizes Federal courts to hear cases brought by or on behalf of a victim of any individual who subjects a person to torture or extrajudicial killing." H.R. Rep. No. 102-367(I), 1992 U.S.C.C.A.N. 84, 87. The note to 28 U.S.C. § 1350 explains that liability attaches for extrajudicial killing "for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death."

It is on this note that Plaintiffs rely to assert that they have standing. They contend that under the TVPA, a wrongful death claimant is entitled to damages based on each beneficiary's *own* loss of continued economic support and, in the case of minor children, loss of economic support for their education. (*See* Doc. #23 at 16). "By bringing such a wrongful death claim under the TVPA . . . Plaintiffs are therefore entitled to pecuniary damages specific to them as beneficiaries." (Doc. #23 at 16). Contrary to Plaintiffs' assertions, Defendants argue that the Plaintiffs lack standing under the TVPA because the statute confers standing "on the direct victim of the wrongful conduct and, where the conduct at issue is an extrajudicial killing, allow a plaintiff to seek damages only *on behalf of the victim*." (Doc. #15 at 11) (emphasis in original). Thus, the relevant question is whether a wrongful death claimant under the TVPA is entitled to "traditional" wrongful death damages (as

defined by state statute) *or* whether the TVPA limits the types of damages recoverable to a wrongful death claimant. The court is convinced it is the latter.

The Eleventh Circuit has not had the opportunity to elucidate the standard for standing in a TVPA claim. Other courts have brushed the issue. In *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, the District Court for the District of Columbia considered whether the siblings of individuals killed in the 1988 bombing of Pan Am Flight 103 over Scotland had standing to bring suit. 541 F. Supp.2d 46, 49-50 (D.C. Cir. 2008). The court held that the siblings lacked standing under the TVPA to sue for their own personal damages because "[t]he plain language and the legislative history of the TVPA make clear that standing is limited to the victim himself or one bringing a claim on behalf of the victim." 541 F. Supp.2d at 54. Claims on behalf of the victims themselves had already been settled in a previous suit. *See id.* The court went on to find that one of the victim's brothers could proceed as a "wrongful death beneficiary" seeking damages "on behalf of his brother." *See id.* at 55. In *Hurst v. Socialist People's Libyan Arab Jamahiriya*, the District Court for the District of Columbia again stated that "[t]he plain language and the legislative history of the TVPA make clear that standing is limited to the victim herself or one bringing a claim on behalf of a direct victim." 474 F. Supp.2d 19, 30 (D. D.C. 2007) (holding that representatives of victims of aircraft terrorism lacked standing to sue Libyan director of airline security because the TVPA allows only for suit by victims or legal representatives asserting victims' claims, and representatives in the case were asserting their own damages claims). And in *Cabello Barrueto v. Fernandez Larios*,[11] the Southern District of Florida considered the issue of standing under the

---

[11] The issue in *Cabello* was who qualified as a legal representative of the estate, such that they had standing under the TVPA. 205 F. Supp.2d at 1333-34. Defendants argued that the TVPA precluded recovery on a torture claim by the victim's representative, but the court rejected that

TVPA, and found that Congress intended to allow the surviving legal representative of a deceased torture victim to recover *on behalf of the victim's estate*. 205 F. Supp.2d 1325, 1334 (S.D. Fla. 2002) (emphasis added) (quoting H.R. Rep. No. 102-367(I), reprinted in 1992 U.S.C.C.A.N. 84, 87 (TVPA "authorizes the Federal courts to hear cases brought by or on behalf of a victim of any individual who subjects a person to torture or extrajudicial killing.")).

While these cases are not binding authority on this court, they do provide some insight as to how courts generally view the standing requirements of the TVPA. They are also persuasive. The court is convinced that a wrongful death claimant can have no standing under the TVPA if she seeks damages on her own behalf. There is simply nothing in the statute suggesting that damages are recoverable for anything beyond those sought "on behalf of" a victim. Throughout the Complaint for equitable relief and damages, Plaintiffs continually state that they bring suit for their "own personal damages suffered as a result of the murder of [their] father[s]." (Compl. ¶¶ 10-17). Later in the Complaint, Plaintiffs reiterate that they "have suffered damages, including emotional harm, loss of companionship and financial support . . ." and add for the first time that they "seek compensatory and punitive damages in amounts to be ascertained at trial for the harm they have suffered individually as well as for the harm suffered by Locarno, Orcasita, and Soler leading up to and during their murders and for their loss of life." (Compl. ¶ 59). In opposing Defendants' motion to dismiss on the standing issue, Plaintiffs argue not that they are suing for damages suffered directly by the allegedly murdered unionists, but rather that the TVPA allows for Plaintiffs to bring a

---

argument, citing the legislative history which allows federal courts to hear cases "brought by or on behalf of a victim." *See id.* at 1334. "The term 'beneficiary in a wrongful death action' is generally intended to [mean] those persons recognized as legal claimants in a wrongful death action under Anglo-American law." *Id.* at 1334 (quoting S. Rep. No. 102-249, at *7).

"wrongful death suit" based on each beneficiary's "own loss of continued economic support, and in the case of minor children, loss of economic support of their education." (Doc. #23 at 16-17). As such, Plaintiffs have done nothing to establish that they are properly claimants to an action for wrongful death, nor that such wrongful death claims are brought on behalf of the deceased victims, as this court is convinced the TVPA requires. See H.R. Rep. No. 102-367, *reprinted in* 1992 U.S.C.C.A.N. 84, 87 (Nov. 25, 1991). Therefore, **all** Plaintiffs in this case lack standing to bring their claims under the TVPA.

### 2. The Alien Torts Claims Act

As earlier set out, the First Congress enacted the ATS as part of the Judiciary Act of 1789. The ATS now provides district courts original jurisdiction "of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Sinaltrainal*, 578 F.3d at 1261 (quoting 28 U.S.C. § 1350). Federal subject matter jurisdiction exists for an ATS claim when the following three elements are satisfied: (1) an alien (2) sues for a tort (3) committed in violation of the law of nations. *See id.* (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005)). But the ATS provides no guidance on the issue of standing.

With the presence of such a gap, courts, including the Eleventh Circuit, generally look to the most analogous statute for guidance. In the case of the ATS, several courts, including the Eleventh Circuit, have referenced the TVPA as the most analogous statute. *See Arce v. Garcia*, 400 F.3d 1340 (11th Cir. 2005) (adopting the TVPA's statute of limitations where ATS did not provide one "because the statutes – and the policies behind the statutes – are similar," including "purpose," "mechanism," and "location within the United States Code"), *vacated on other grounds*, 434 F.3d 1254 (11th Cir. 2006); *see also Estate of Cabello v. Fernandez-Larios*, 157 F. Supp.2d 1345, 1355

(S.D. Fla. 2001) ("When a federal statute does not specify key details, such as standing, federal courts generally borrow analogous state law ..."), *overruled on other grounds*, 416 F.3d 1242 (11th Cir. 2005). Thus, because **all** Plaintiffs lack standing to sue under the TVPA (*see* Section III.C.1, *supra*), they necessarily lack standing under the ATS as well.[12]

For the foregoing reasons, Freddy Locarno Baloco, Katherine Paola Locarno Baloco, Marlon Alexi Orcasita Almarales, Ashly Patricia Orcasita Almarales and Ingrid Karina Soler Urrego are barred from pursuing their claims in this case on the grounds of res judicata, issue preclusion, and standing. Plaintiffs Ayleen Paoloa Orcasita Almarales, Stefany Loren Orcasita Cordoba, and Sergio Esteban Soler Urrego are barred from pursuing their federal claims because they lack standing to bring them.[13]

### D. Supplemental Jurisdiction

Because none of the Plaintiffs to this lawsuit have standing to bring their federal claims, it would be error for this court to retain the wrongful death state-law claims.[14] It is well established that a district court should properly dismiss state law claims when all federal claims are dismissed before trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of

---

[12] Although Plaintiffs claim that they have standing to sue under the TVPA, they make no argument that the standing analysis applied to the TVPA claim should not apply to the ATS claim. (*See* Doc. #23 at 15-19) (combining the standing analysis for claims brought under the TVPA and ATS).

[13] Plaintiffs have not sought leave to amend the complaint.

[14] Even were Plaintiffs to have standing to bring their federal claims, this court would nonetheless decline to exercise supplemental jurisdiction over the wrongful death claim. Although 28 U.S.C. § 1367(a) allows courts to exercise supplemental jurisdiction over all claims related to properly-plead federal claims, pendent jurisdiction is a doctrine of discretion, and not of right. *See Wu v. Thomas*, 847 F.2d 1480, 1486 (11th Cir. 1988) (internal quotations omitted).

state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *see also Hardy v. Birmingham Bd. of Ed.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (where party could pursue "difficult" state law questions in state court, absent federal claims, "pendent jurisdiction may not be exercised by a federal court") (quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)); *Faucher v. Rodziewicz*, 891 F.2d 864, 871-72 (11th Cir. 1990) ("If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."). The wrongful death claim raises a novel and complex issue under the law of Colombia. *See* 28 U.S.C. § 1367(c)(1). Those issues are so complex that it would be impossible for this court to navigate the Colombian law requisites for a wrongful death claim. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318 (11th Cir. 2008) ("The conclusion of the district court that the claim raised complex issues is supported by the record, and the court was well within its discretion to decline jurisdiction over that claim.").

**IV.    Conclusion**

For all of the foregoing reasons, this case is due to be dismissed in its entirety. Despite the fact that three of the eight Plaintiffs are not due to be dismissed on res judicata grounds, the claims of ***all*** Plaintiffs fail on standing and supplemental jurisdiction grounds.[15] A separate order will be entered.

---

[15] Were this court to have jurisdiction over any of the claims in this action, it would have transferred venue, pursuant to the agreement of the parties, to the Southern Division of the Northern District of Alabama. (*See* Doc. #15 at 18-20; *see also* Doc. #23 at 1, n.1). Such transfer of venue would be appropriate under 28 U.S.C. §§ 1404 and 1406. However, that request is now moot.

**DONE** and **ORDERED** this ____9th____ day of November, 2009.

_____
            **R. DAVID PROCTOR**
            UNITED STATES DISTRICT JUDGE