FILED
2012 Sep-12  PM 01:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **FREDDY LOCARNO BALOCO, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:09-CV-00557-RDP** |
| | } | |
| **DRUMMOND COMPANY, INC., et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

The court has before it the Motion for Partial Dismissal of the First Amended Complaint and Motion to Transfer Venue (Doc. #62) filed by Drummond Company, Inc., Drummond Ltd., and Augusto Jiminez and Defendants' Motion for Summary Judgment (Doc. #63), both filed on November 7, 2011.  Having considered the briefs, evidentiary submissions and oral argument, the court finds that the Motion for Partial Dismissal (Doc. #62) and the Motion for Summary Judgment (Doc. #63) are due to be granted because all of the children's claims are barred by *res judicata*.

## I.      <u>Procedural Background.</u>

Plaintiff Baloco and eight (8) others, either in their own right or through their mothers as guardians of minors, commenced this action on March 20, 2009 by filing a complaint (Doc. #1) for equitable relief and damages under the Alien Torts Claims Act ("ATS"), Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, and Colombian wrongful death law.  (*See generally* Complaint) ("Compl.").  In the original complaint, Plaintiffs allege that they are children of Valmore Locarno ("Locarno"), Victor Hugo Orcasita ("Orcasita"), or Gustavo Soler ("Soler"), each of whom were murdered in Colombia in 2001 by paramilitaries acting as agents of, or aided and abetted by,

Defendants Drummond Company, Inc. ("DCI"), Drummond, Ltd. ("DLTD"), Augusto Jiminez ("Jiminez," President of DLTD's Colombia branch), and Alfredo Araujo ("Araujo," an employee of DCI).

On May 13, 2009 Defendants DCI, DLTD, and Jiminez filed original and corrected motions to dismiss (Docs. #12, 15).  After briefing, on November 9, 2009 this court entered a memorandum opinion (Doc. #33) and order (Doc. #34) granting the motion to dismiss (Doc. #15) in its entirety and dismissing the action with prejudice.  That decision was appealed (*see* Doc. #35), then reversed and remanded by the Eleventh Circuit on July 13, 2011.  (*See generally* Doc. #40).  The Eleventh Circuit found that Plaintiffs had standing on their TVPA and ATS claims, and that this court prematurely resolved the *res judicata* issue with respect to five of the Plaintiffs.  (Doc. #40 at 25).

On October 6, 2011 this court entered a Memorandum Opinion and Order (*see* Doc. #58) allowing Plaintiffs to file a First Amended Complaint.  The next day, Plaintiffs filed their First Amended Complaint (Doc. #60).  On November 7, 2011 Defendants Drummond Company, Inc., Drummond Ltd., and Augusto Jiminez filed the Motion for Partial Dismissal (Doc. #62) and the Motion for Summary Judgment (Doc. #63) which are considered herein.[1]

Each party submitted evidence in support of their opposing positions on summary judgment.  On November 7, 2011, Defendants filed a brief (Doc. #63) and evidence[2] (Doc. #63, Exhs. A

---

[1] Defendant Mike Tracy filed a Motion to Dismiss the First Amended Complaint and Motion to Transfer Venue (Doc. #66) on November 10, 2011.  For a discussion of that Motion, *see* footnote 15, *infra*.

[2] Defendants submitted: Second Amended Complaint, *Rodriguez et al. v. Drummond Co., Inc. et al.*, No. 02-cv-0665 (N.D. Ala. May 14, 2003) (Exhibit A); Third Amended Complaint, *Drummond I* (Exhibit B); Notice of Identities of John Doe and Jane Doe Plaintiffs, *Drummond I* (Exhibit C); Jane Doe II Deposition, *Drummond I* (Exhibit D); Jane Doe III Deposition, *Drummond I* (Exhibit E); Jane Doe IV Deposition, *Drummond I* (Exhibit F); Jane Doe V Deposition, *Drummond*

through M) in support of their motion.  Plaintiffs filed a response (Doc. #69) in opposition to the

motion on December 5, 2011 and on the same date submitted evidence[3] (Doc. #68, Exhibits 1

through 12) in support of their opposition.  Defendants filed a reply brief (Doc. #77) to Plaintiffs'

opposition on December 20, 2011.

## II.     Standard of Review.

Under Federal Rule of Civil Procedure 56,[4] summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

*I* (Exhibit G); Order, *Drummond I* (Exhibit H); Order, *Drummond I* (Exhibit I); Jury Verdict Form (Exhibit J); Order, *Drummond I* (Exhibit K); Transcript of Status Conference (Exhibit L); Complaint, *Rodriguez*, No. 02-cv-665-KOB (Exhibit M).

[3] Plaintiffs submitted: Declaration of Nubia Yolanda Urrego Urrea in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 1); Declaration of Ingrid Karina Soler Urrego in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 2); Declaration of Sergio Esteban Soler Urrego in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 3); Declaration of Yaneth Esther Baloco Tapia in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 4); Declaration of Freddy Locarno Baloco in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 5); Declaration of Katherine Paola Locarno Baloco in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 6); Declaration of Elisa Victoria Almarales Viloria in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 7); Declaration of Ayleen Paola Orcasita Almarales in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 8); Declaration of Marlon Alexi Orcasita Almarales in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 9); Declaration of Ashly Patricia Orcasita Almarales in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 10); Declaration of Nancy Iveth Cordoba Vidal in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 11); and Declaration of Stefany Loren Orcasita Cordoba in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Exhibit 12).

[4]  Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56 Advisory Committee's Note (2010 Amendments).

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). Here, because *res judicata* is an affirmative defense, Defendants bear the burden of proof at trial. In such a case, the initial summary judgment burden can only be met by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact – *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial – and that the party is entitled to judgment as a matter of law. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such

a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A court may dismiss a complaint under Rule 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). That is, if a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.*; *see Ashcroft v. Iqbal*, 139 S.Ct. 1937, 1953 (2009) (holding that *Twombly* was not limited to antitrust cases but rather was based on an interpretation and application of Federal Rule of Civil Procedure 8).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* [plausible] theory."[5] *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v.*

---

[5] *Twombly* teaches that the correct standard is whether a plaintiff's claims are "plausible." 550 U.S. at 547.

*Johnston*, 376 F.2d 43 (5th Cir. 1967)).   Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

## III.   Relevant Undisputed Facts.[6]

### A.   "Parties" to the *Drummond I* Case

In 2002, a lawsuit was filed in the Northern District of Alabama against Drummond Company, Inc. ("DCI"), Drummond Ltd. ("DLTD"), Augusto Jiminez, and other defendants titled *Rodriguez et al. v. Drummond Co., Inc. et al.*, No. 02-CV-665-KOB.  (Doc. #63, ¶1; Doc. #69, ¶ 1). In 2003, another complaint was filed in the Northern District of Alabama against DCI, DLTD, Garry N. Drummond, and Augusto Jiminez by a single Plaintiff, Juan Aquas Romero ("*In re Juan Aquas Romero*").  (*See* Case 7:03-cv-575-KOB, Doc. #1).  In late 2003, the two cases were consolidated by Judge Bowdre into a single case using the title *In re Juan Aquas Romero v. Drummond Co., Inc. et al.* and bearing the civil case number 03-CV-575-KOB (referred to herein as *Drummond I*).  The

---

[6] If the facts are in dispute, they are stated in the manner most favorable to non-moving party. *Fitzpatrick*, 2 F.3d at 1115.

original complaints were amended three times. (Doc. #63, ¶1; Doc. #69, ¶1). The Second Amended

Complaint, filed originally in *Rodriguez* and dated May 14, 2003, named the following Plaintiffs:

> JOHN DOE I, on behalf of himself and as heir of the deceased, Valmore Locarno Rodriguez; JANE DOE I, on behalf of herself and her minor child individually and as heirs of Valmore Locarno Rodriguez; JANE DOE II, on behalf of herself and her minor children individually and as heirs of Valmore Locarno Rodriguez; JANE DOE III, on behalf of herself and her minor child individually and as heirs of Victor Hugo Orcasita Amaya; JANE DOE IV, on behalf of herself and her minor children individually and as heirs of Victor Orcasita Amaya; JANE DOE V, on behalf of herself and her minor children individually and as heirs of Gustavo Soler Mora; and SINTRAMIENERGETICA.

(Doc. #63, Exh. A). The Third Amended Complaint, filed originally in *In re Juan Aquas Romero*,

names Plaintiffs as:

> [L]egal heirs to Valmore Locarno Rodriguez (hereinafter Locarno), Victor Hugo Orcasita Amaya (hereinafter Orcasita), and Gustavo Soler Mora (hereinafter Soler), three murdered trade union leaders, and Plaintiff SINTRAMIENERGETICA, the trade union the murdered leaders served, bring this action against Defendants Drummond Company, Inc., Drummond Ltd., and Garry N. Drummond (collectively referred to as "Defendants") for equitable relief and damages. The three murdered trade union leaders, Locarno, Orcasita and Soler, were acting on behalf of Plaintiff SINTRAMIENERGETICA and represented the workers at Defendant Drummond Company's subsidiary, Drummond, Ltd., when they were murdered by agents or employees of Defendants.

(Doc. #63, Exh. B at ¶1). That document specifically underscores its relation to CV-02-BE-0665-W.

(Doc. #63, Exh. B) ("This Document Relates to: CV-02-BE-0665-W."). Paragraph 3 of the Third

Amended Complaint alleges:

> With respect to their business operations in Colombia, the Defendant companies have hired, contracted with or otherwise directed paramilitary security forces that utilized extreme violence and murdered, tortured or otherwise silenced trade union leaders of unions representing workers at Defendants' facilities. With respect to the three murdered trade union leaders whose heirs have brought this action, Locarno, Orcasita and Soler, they were

7

ultimately murdered by paramilitary employees and/or agents working for Defendants to eliminate effective leaders of the trade union representing Drummond workers, and to intimidate other workers from joining the union or assuming leadership position.  Further, the murders of Locarno, Orcasita and Soler occurred while contract negotiations with Drummond were ongoing, and they were murdered to prevent their participation in the negotiations.  The murders of Locarno, Orcasita and Soler are extrajudicial killings in violation of the Alien Tort Claims Act (ATCA), 28 U.S.C. § 1350, the Torture Victims Protection Act (TVPA), international human rights law, and the common tort law of the state of Alabama.

(Doc. #63, Exh. B at ¶ 3).  The Plaintiffs are more specifically named as follows:

Plaintiff John Doe I seeks damages and equitable relief for the death of Locarno, who was a citizen and resident of Colombia and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd..  Locarno was murdered by paramilitary employees and/or agents for Defendants.  Plaintiff John Doe I brings this case *de iure proprio* for his own damages suffered as a result of the murder of Locarno as well as *iure hereditatis* for the damages which Locarno suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 13).

Plaintiff Jane Doe I seeks damages and equitable relief for the death of Locarno who was a resident and citizen of Colombia and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd..  Locarno was murdered by paramilitary employees and/or agents for Defendants.  Plaintiff Jane Doe I brings this case *de iure proprio* for her own damages suffered as a result of the murder of Locarno as well as *iure hereditatis* for the damages which Locarno suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 14).

Plaintiff Jane Doe II seeks damages and equitable relief for the death of Locarno who was a resident and citizen of Colombia and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd..  Locarno was murdered by paramilitary employees and/or agents for Defendants.  Plaintiff Jane Doe II brings this case *de iure proprio* for her own damages suffered as a result of the murder of Locarno as well as *iure hereditatis* for the damages which Locarno suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 15).

Plaintiff Jane Doe III seeks damages and equitable relief for the death of Orcasita who was a resident and citizen of Colombia and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd.. Orcasita was murdered by paramilitary employees and/or agents for Defendants. Plaintiff Jane Doe III brings this case *de iure proprio* for the damages she has suffered as a result of the murder of Orcasita as well as *iure hereditatis* for the damages which Orcasita suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 16).

Plaintiff Jane Doe IV seeks damages and equitable relief for the death of Orcasita who was a citizen and resident of Colombia, and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd.. Orcasita was murdered by paramilitary employees and/or agents for Defendants. Jane Doe IV brings this case *de iure proprio* for the damages she has suffered as a result of the murder of Orcasita as well as *iure hereditatis* for the damages which Orcasita suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 17).

Plaintiff Jane Doe V seeks damages and equitable relief for the death of Soler, who was a citizen and resident of Colombia, and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd.. Soler was murdered by paramilitary employees and/or agents for Defendants. Plaintiff Jane Doe V brings this case *de iure proprio* for the damages she has suffered as a result of the murder of Soler as well as *iure hereditatis* for the damages which Soler suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 18).

Jane Doe VI seeks damages and equitable relief for the death of Orcasita, who was a citizen and resident of Colombia and was a local Union officer at Drummond Company's subsidiary, Drummond Ltd.. Orcasita was murdered by paramilitary employees and/or agents for Defendants. Plaintiff Jane Doe VI brings this case *de iure proprio* for her own damages suffered as a result of the murder of Orcasita as well as *iure hereditatis* for the damages which Orcasita suffered in the course of and as a result of his murder.

(Doc. #63, Exh. B at ¶ 19). Paragraph 20 of the Third Amended Complaint states that:

As heirs of Locarno, Orcasita and Soler, respectively, Plaintiffs John Doe I and Jane Doe I to VI are deemed under Colombian law to be legal successors

9

of these deceased individuals and occupy the place of the aforesaid deceased in this case. In particular, *they are the repository of these decedents' rights*. Plaintiffs file this case under pseudonyms because, if they were identified as bringing this action to challenge and seek compensation for the assassination of Locarno, Orcasita, and Soler by paramilitary forces in the Cesar Province, they would be at imminent risk of violent retribution, including murder, by these same force [sic]. *The identities of Plaintiffs are more specifically set forth in a document filed with the Court under seal and entitled, "Notice of Identity of Plaintiffs."*

(Doc. #63, Exh. B at ¶ 20) (emphases added).

The aforementioned Notice of Identities was filed with the Third Amended Complaint and

was never amended or withdrawn by the Plaintiffs in *Drummond I*. (Doc. #63, ¶ 5; Doc. #69, ¶ 5).

It sets out:

> Plaintiff Jane Doe II is (1) Yaneth Baloco Tapia, the "permanent companion" of Valmore Locarno, **and** (2) the children of Yaneth and Valmore. We note that Yaneth and her children are heirs of Locarno under Colombian law which, taking into account the reality that in some regions of the country men have multiple wives/partners, treats the "permanent companions" of a decedent and their children as heirs to the decedent in the same line of succession as the legal wives and children of the decedent.

(Doc. #63, Exh. C at ¶ 3) (emphasis in original).

> Plaintiff Jane Doe III is (1) Nancy Cordoba Vidal, the legal wife of Victor Orcasita, **and** (2) the child of Nancy and Victor.

(Doc. #63, Exh. C at ¶ 4) (emphasis in original).

> Plaintiff Jane Doe IV is (1) Elisa Almarales Viloria, the "permanent companion" of Victor Orcasita, and (2) the three children of Elisa and Victor.

(Doc. #63, Exh. C at ¶ 5).[7]

> Plaintiff Jane Doe V is (1) Nubia Urrego Urrea, the legal wife of Gustavo Soler, **and** (2) the two children of Nubian and Gustavo.

---

[7] For whatever reason – whether intentional or a typo – the word "and" is not bolded in this particular paragraph, although as noted it is bolded in all other similar paragraphs.

(Doc. #63, Exh. C at ¶ 6) (emphasis in original).

After the Notice of Identities was filed, the parties were more readily able to advance discovery in *Drummond I*.  (*See* Doc. #94 at 41).[8]  Defendants began taking the depositions of the (now named) Plaintiffs and asked them questions threshold to any lawsuit – Did you authorize the filing of the lawsuit?; Who is that lawsuit brought on behalf of?; Do you understand that you are a plaintiff in a lawsuit?  Jane Doe II's (Yaneth Baloco Tapia) testimony went as follows:[9]

> Q:    Do you understand that you're a plaintiff in a lawsuit brought against Drummond in
>       the United States?
> A:    Yes, I understand.
> Q:    Did you authorize the filing of that lawsuit?
> A:    Yes, I authorized it.

---

[8] At the hearing on the motions in this case, counsel for Plaintiffs stated: "Well, I think it was more on a practical level of we were beginning discovery, and there was an issue of who was going to be deposed and how much information we had to give to the Defendants at that time, so we agreed that we would disclose the names of the pseudonymed mothers and the other pseudonymed adult Plaintiffs so that we could begin discovery through counsel for the Defendants, and so the main purpose was to move that forward and to get some assurances that the information would be under seal and limited to Drummond's counsel."  (Doc. #94 at 41).

[9] Plaintiffs argue that the testimony of the *Drummond I* Plaintiff mothers on the question of whether claims were being asserted on behalf of their children constitute inadmissible legal conclusions. (Doc. #69 at 3, ¶ 6).  "[T]he mothers' deposition testimony from *Drummond I* does not constitute binding admissions because a party's conclusion on matters of law, in this case whether the mothers in *Drummond I* were acting in a representative capacity on behalf of their children, is inadmissible evidence."  (Doc. #69 at 10) (citing *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n. 9 (3d Cir. 2009)(refusing to bind a company to the deposition testimony of a Rule 30(b)(6) witness that 'contained no factual admissions' and included 'only his own interpretation of the contract based on his reading of it at trial.'"))  Although this question is not central to the court's finding that summary judgment is due to be granted based on non-party preclusion, it is beyond debate that the mothers testified as to the *fact* that they were bringing the lawsuit on behalf of their children.  The mothers needed no legal, "scientific, technical or other specialized knowledge" to testify as to their understanding about their role in the litigation.  *See Carter v. DecisionOne Corp.*, 122 F.3d 997, 1004-05 (11th Cir. 1997) (allowing testimony that the witness believed defendant discriminated against plaintiff because of her age and gender, concluding that these opinions were "properly admitted" under Federal Rule of Evidence 701 and 704 "if they are based on the personal observations of the witness.").

> Q:  And is that lawsuit brought on your behalf and also on behalf of your children as well?
>
> A:  In my name and my children's name.
>
> Q:  And those children are Freddie Locarno Baloco and Catherine Locarno Baloco?
>
> A:  Yes.

(Doc. #63, Exh. D at 8).  Other mothers testified similarly that they were bringing the lawsuit on behalf of themselves and their children (Doc. #63, Exh. E at 20; Exh. F at 18-19; Exh. G at 16) for the purpose of "hav[ing] justice done, not only economically, because this is something that will never be repaired, but also morally, because it has affected my children and myself."  (Doc. #63, Exh. F at 18).  However, in declarations filed contemporaneous with the instant motions in this case, the mothers asserted that the comments made in deposition testimony were not made "on my rights or those of my children as a lawyer, and I never intended to comment on my children's legal status in the litigation."  (Doc. #69, Exh. 1, ¶8; Exh. 2, ¶ 6; Exh. 3, ¶6; Exh. 4, ¶ 7; Exh. 5, ¶ 6; Exh. 6, ¶ 5; Exh. 7, ¶ 6; Exh. 8, ¶ 6; Exh. 9, ¶6; Exh. 10, ¶6; Exh. 11, ¶6; Exh. 12, ¶ 5).  None of the children participated in the *Drummond I* litigation, nor did they understand that they were involved in the *Drummond I* case.  (Doc. #69, ¶¶ 4-6; Doc. #77, ¶¶ 4-6).  However, counsel for Plaintiffs now[10] admit that the children named in *Baloco* (except for the children first named with the First Amended Complaint in *Baloco*) *were in fact* those referenced by the Notice of Identities in *Drummond I*.  (*See* Doc. #94 at 21-22, 43-45, 86-87).

---

[10] In the course of briefing the initial *res judicata* motion to dismiss, the *Baloco* Plaintiffs argued that they were not parties to any prior legal action brought against the Drummond Defendants.  (*See* Compl., ¶¶ 10-17; *see also* Doc. #33 at 6 and footnote 5).  They declined to comment, however, on the specific identities of the children who were referenced in the Notice of Identities.  (*See* Doc. #23 at 8-10).

**B.      Outcome of the *Drummond I* Case**

On March 14 and June 15, 2007, the *Drummond I* court granted summary judgment in favor of Defendants as to certain claims and allowed the remaining claim under the Alien Tort Statute for aiding and abetting murders to go to the jury.  (Doc. #63, ¶¶ 14, 15; Doc. #69, ¶¶ 14, 15).  In July 2007, the jury returned a verdict in favor of DLTD and Augusto Jiminez (the remaining Defendants); the court issued a final judgment and dismissal of the case with prejudice, in favor of Defendants. (Doc. #63, ¶¶ 16, 17; Doc. #69, ¶¶ 16, 17).  The *Drummond I* court's final judgments were affirmed by the Eleventh Circuit, *see Romero v. Drummond Co.*, 552 F.3d 1303 (11th Cir. 2008), and thus became final judgments.

**C.      Posture of *Drummond I* and the Current *Baloco* Case**

The First Amended Complaint in *Baloco* seeks damages for the killings of Locarno, Orcasita and Soler, which were at issue (and tried to a jury which found no liability) in *Drummond I*.  (Doc. #63, ¶ 19; Doc. #69, ¶ 19).  Both the First Amended Complaint in this case and the Third Amended Complaint in *Drummond I* include claims for extrajudicial killing under the Alien Tort Statute, extrajudicial killing under the TVPA, and common law wrongful death.  (Doc. #63, ¶21; Doc. #69, ¶ 21).  In this case (*Baloco*), *only* the *children* of the murdered unionists bring claims as "the legal heirs to, and wrongful death beneficiaries of Locarno, Orcasita and Soler."  (Doc. #60, ¶ 1). "Plaintiffs, in their capacities as wrongful death beneficiaries, bring claims for damages on behalf of the decedents and for their own damages incurred as a result of the executions of the decedents . . .".  (Doc. #60, ¶1).

13

**IV.**   **Analysis of the Summary Judgment Arguments.**

Defendants Drummond Company, Inc., Drummond Ltd., and Augusto Jiminez argue that Plaintiffs' claims in *Baloco* are barred by both subcategories of *res judicata* – claim preclusion and issue preclusion.  (Doc. #63 at 9).

The parties do not have any dispute regarding the contours of the controlling law.  Claim preclusion prohibits parties from bringing claims in subsequent, separate litigation which either were brought – or could have been brought – in earlier litigation, if the following four elements are present: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both case.  *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).  Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court with a determination essential to the prior judgment.  *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001); *see also Gorski v. United States*, 2012 WL 1512119, No. 09-742T at *8 (Fed. Cl. April 30, 2012) ("[A]ctually litigated does not mean thoroughly litigated, but it does mean that the parties disputed the issue and the trier of fact resolved it.") (internal citations omitted).  By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines serve to: (1) protect against the expense and vexation attending multiple lawsuits; (2) conserve judicial resources; and (3) foster reliance on judicial action by minimizing the possibility of inconsistent decisions.  *Taylor v. Sturgell*, 553 U.S. 880, 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

14

Preclusion can be applied to non-parties despite the fact that the Supreme Court often repeats the rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor*, 553 U.S. at 892 (citing *Hansberry*, 311 U.S. at 40). As with most rules, this one is subject to certain malleable exceptions:[11] (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by non-litigants. *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Defendants contend that two of these exceptions apply here – the "substantive legal relationship" and the "adequate representation" exceptions. After careful review, the court concludes that each one of these two exceptions provide substantial justification for preclusion of the "non-parties[']" claims in this case. 18A C. Wright & A. Miller, Federal Practice And Procedure, § 4448 at 327-28 (2d ed. 2002).

## A. The law of the case doctrine does not, by necessity, preclude dismissal of Plaintiffs' claims here.

This court recognizes that the decision of the Eleventh Circuit in *Baloco et al. v. Drummond Co., Inc. et al.*, 640 F.3d 1338 (11th Cir. 2011) ("*Baloco I*") operates as the law of the case. However, that decision is simply of no application to the issues to be decided in these motions. In

---

[11] The *Taylor* court made clear that the following list was "meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy." *Taylor*, 553 U.S. at 893 n. 6 (disapproving of "virtual representation" as a term of reliance for non-party preclusion, but providing a vehicle to arrive at similar destinations).

*Baloco I*, the Eleventh Circuit held that further factual development was needed into the question of whether the children in *Drummond I* were actual parties to that suit.  640 F.3d at 1351.  For the purposes of this opinion, however, there is no need to delve into the ocean of evidence that the children in this case were in fact the children represented in *Drummond I*.  Rather, this court will assume, without deciding, that the children in *Baloco* were not actual parties to *Drummond I*.  With that assumption serving as the court's alpha point, this opinion will focus on the questions attendant to non-party preclusion.  In *Baloco I*, the Eleventh Circuit had no reason to address – and in fact did not address – the application of non-party preclusion.  With these points in mind, the court proceeds to address the parties' arguments regarding "substantive legal relationship" and "adequate representation" in turn.

**B.     There was a substantive legal relationship between the mothers and the children.**

As the Supreme Court has recognized, a variety of pre-existing substantive legal relationships operate to justify non-party preclusion.  *See Taylor v. Sturgell*, 553 U.S. 880, 894 and n. 8 (2008).  Such substantive legal relationships are sometimes collectively referred to as "privity."  *See id.*  Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor.  *Id.* at 894; *see also Harty v. Ehden, N.V.*, Slip Copy, 2012 WL 2312044, No. 12-cv-14087-KMM at *3 (S.D. Fla. June 18, 2012) ("The parties are similarly situated and their interests are identical: Disabled Patriots of America, Inc., Mary F. Doran, and Owen Harty all seek to enforce the ADA [Americans with Disabilities Act] for the benefit of themselves and others . . . there is sufficient privity between the parties for purposes of res judicata.").  "In some circumstances" such as inheritance, "persons holding successive interests in

16

the same property or claim can preclude each other."  18A Wright & Miller, § 4448 at 329.  That is,

"decedents and their heirs, successors in interest and survival claimants" may enjoy a substantive

legal relationship.  *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (9th Cir. 2005);

*see also In re Hanson's Estate*, 210 F. Supp. 377, 385 (D. D.C. 1962), *aff'd*, 327 F.2d 889 (D.C. Cir.

1963) ("The term, privity, denotes mutual or successive relationship to the same rights of property.

. . . All privities, whether in estate, blood or in law, are estopped from litigating that which is

conclusive on him with whom they are in privity."); *Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658,

666 (E.D. Tex. 2000) (holding that the plaintiffs, who were beneficiaries of the same decedent, "and

all other alleged beneficiaries of [decedent's] estate should be regarded as in privity with the estate

and with each other regarding claims of that estate that have been filed by purported representatives

of that estate.").

There can be no dispute that Locarno, Orcasita, and Soler, through their representatives, were

parties to *Drummond I*.  (*See* Doc. #63, Exh. B at ¶ 20) ("[Plaintiffs are] the repository of these

decedents' rights.").  As one threads through all of the complaints in that case, it is readily apparent

that the common denominator of suit being brought "*iure hereditatis* for the damages which [the

decedent] suffered in the course of and as a result of his murder."  (Doc. #63, Exhs. A, B).  The

individual claims of the mothers and children *can only* be asserted for wrongful death *arising out

of* the death of the former Drummond employee. It is of no import that a mother may have suffered

different *damages* than those suffered by a child, because the preclusion issue presented here

involves the threshold question of a showing of liability – and that question of liability is precisely

the same as that addressed head on by the court and jury in *Drummond I*.  Because the decedents,

their representatives, and their heirs and beneficiaries are all in privity with one another, the finding

of no liability in *Drummond I* is binding on all of them.[12]   *See* discussion *infra* Section IV.B. on

alignment of interests.   For this reason alone, the Motion for Summary Judgment (Doc. #63) is due

to be granted on the ground that the non-party children's claims are barred by *res judicata*.

### C.     The children were adequately represented by their mothers in *Drummond I*.

There is an additional, and alternative, reason for granting Defendants' dispositive motion.

In *Taylor v. Sturgell*, the Supreme Court held that representative suits with preclusive effect on non-

parties "include properly conducted class actions, and suits brought by trustees, guardians, and other

fiduciaries."   553 U.S. at 894-95 (internal quotations omitted).   According to Wright & Miller,

"[t]rustees, executors, statutory representatives in death and survival actions, and guardians are

familiar examples" of when this adequate representation prong applies.   18A § 4448 at 328.   But

those are not the only examples.   In order for this adequate representation prong to apply it must be

demonstrated that: (1) either the party understood herself to be acting in a representative capacity or

the original court took care to protect the interests of the non-party ***and*** (2) the interests of the

nonparty and her representative must be aligned.   *Taylor*, 553 U.S. at 900 (internal citations omitted).

---

[12] Counsel for Plaintiffs assert one primary argument in dispute of the contention that the children and their mothers, *in this case*, are in a legally recognized substantive relationship. Plaintiffs cite *Taylor and Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir. 1985) for the contention that a familial relationship is not enough for privity in this context. (*See* Doc. #69 at 22-23).   The court agrees that, under *Taylor and Freeman*, a familial relationship standing alone is, indeed, not enough to satisfy the question where non-party preclusion is the issue.   But where there is a familial relationship *as heirs to the same right*, the primary case cited makes no comment. In *Taylor and Freeman*, after a car accident injured a father and killed his minor daughter, the father sued for *his* injuries and lost.   The subsequent suit was brought by the father, as representative of his wife and minor daughter, *for the wrongful death of the daughter*.   The *Taylor and Freeman* case involved a vastly different set of facts than presented in this case, where both the mothers and the children seek to bring a claim for the *same* wrongful death(s) of the *same* Drummond employee(s).

Applying these elements here, the first question to address (in applying the concept of adequate representation) is whether the parties to the suit understood themselves to be suing on behalf of the non-parties – *i.e.*, whether the mothers understood, at the time of *Drummond I*, that they were suing on behalf of the children.  *See Taylor*, 553 U.S. at 905 (citing *Richards*, 517 U.S. at 801-802).  The various complaints filed in *Drummond I* make plain that the mothers filed suit on behalf of themselves and their minor children as heirs of the deceased.  (Doc. #63, Exhs. A, B; *see also* Doc. #94 at 65, 80, 81 (the mothers are deemed to have authorized the filing of the Notice of Identities)).  Although the Eleventh Circuit has cautioned that the listing of the children on the Notice of Identities – which was moored to the Third Amended Complaint in *Drummond I* – was not enough for a finding that the children were indeed proper *parties* to *Drummond I* (*see* Doc. #94 at 22, 23), it is beyond question that the Notice of Identities evidences an *intention* (as opposed to a legal conclusion)[13] of the mothers to represent the interests of their children in *Drummond I*.  (*See* Doc. #94 at 65, 80, 81 (the mothers are deemed to have authorized the filing of the Notice of Identities); *see also* Doc. #94 at 84 (the Eleventh Circuit has implied that the children were present in the *Drummond I* suit.); Doc. #94 at 85 ("the [Notice of Identities] document speaks for itself.").  Moreover, time and again the mothers testified in their depositions in *Drummond I* that they were bringing the lawsuit on behalf of themselves ***and*** their children in an effort to "seek justice."  (*See* discussion *supra* Section IV.A. (Q: "All I want to know if whether you are bringing the lawsuit only on your own behalf or on your children's behalf as well?"; A: "Of all of us; my three children and

---

[13] *See* footnote 9, *supra*.

myself." (Doc. #63, Exh. F at 19))).  That is not a matter that can now be debated and subject to a flip flop once the import of those answers is realized.[14]

Having established that the mothers understood that they were bringing suit on behalf of their children, the remaining question is whether the interests of the children and the mothers are aligned. *See Taylor*, 553 U.S. at 882.  For parties to be so closely aligned such that the party's representation in the first suit adequately represents the non-party in the attempted second suit, there must be more than parallel interests or the use of the same attorney in both suits.  *See Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985) (internal citations omitted).  By requiring a more precise alignment of interests, the inquiry focuses on whether there is a desire for the same outcome and whether the same legal theories in pursuit of that outcome are available.  *See* 7A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1769 (3d ed. 2005); *see also* Martin H. Redish & William J. Katt, *Taylor v. Sturgell*, *Procedural Due Process, and the Day-In-Court Ideal: Resolving the Virtual Representation Dilemma*, 84 Notre Dame L. Rev. 1877 (July 2009) ("[I]f the representative party desires the same outcome and has access to the same arguments as the absent

---

[14] With the filing of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Based on Res Judicata and Memorandum of Authorities (Doc. #69), counsel for Plaintiffs attached declarations of the mothers and children at issue.  (*See* Doc. #69, Exhs. 1-12).  Across the board, those declarations aver that the mothers never intended to comment on their children's legal status in the case, never intended to involve their children, and that the children themselves were not involved with the day to day operations of the lawsuit.  Putting aside that these declarations do not refute the ***fact*** of representation, to the extent that the declarations attempt to create an issue of fact on the question of intent (*see* Doc. #94 at 71-72), they are **STRICKEN** as sham declarations.  *See Van T. Junkins & Assocs., Inc. v. U.S. Indust., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

party, their interests are aligned, even if they have different reasons for pursuing the same outcome.").[15]

The interests that the mothers and their children had in *Drummond I* all arose out of the same common nucleus of operative facts.  (Doc. #94 at 28).  The claims of each involve the same liability fact issue – whether Drummond (and the other Defendants) were responsible for the murders of these same decedents.  (Doc. #94 at 29).  That is, the respective Plaintiffs claim that these same Defendants[16] committed the murders.  (Doc. #94 at 29).  Stated even more succinctly, the mothers who litigated in *Drummond I* possessed the same sufficient, personal incentive to litigate the liability issues as would have their children if the children had been parties in that case.  (*See* Doc. #94 at 77-78) ("Well, we did everything that we could do at that time on that issue . . . ").  There can be no

---

[15] Counsel for Plaintiffs argue now, for the first time, that because the children have separate *damage* claims from their mothers, their interests at the time of *Drummond I* necessarily could not have been perfectly aligned.  (*See* Doc. #69 at 26-27).  This assertion is not only belated, it simply misses the mark.  It is of no moment that the mothers and children could have pursued different damage calculations and/or theories.  The key issue – that is, the controlling inquiry for purposes of determining alignment – is whether the parties desire the same outcome and have access to the same arguments on the question of **liability**.  Without question, the answer is "absolutely."  The proof requirements to establish liability are the same for each group, and counsel for Plaintiffs admitted that the liability claims for the murders allegedly perpetrated by Drummond were vigorously pursued in *Drummond I*.  (*See* Doc. #94 at 77).

[16] On November 10, 2011 Defendant Mike Tracy filed a Motion to Dismiss the First Amended Complaint and Motion to Transfer Venue (Doc. #66).  That Motion (Doc. #66) has been fully briefed.  (*See* Docs. #66, 70, 79).  One of the grounds for Mike Tracy's Motion to Dismiss is that Plaintiffs' claims are barred by *res judicata*.  (*See* Doc. #66 at 15-18).  Counsel for Plaintiffs conceded on the record that, should the court find that the children's claims are in fact barred by *res judicata* against the Drummond Defendants, they must also be barred as to Mike Tracy.  (*See* Doc. #94 at 94-95) (Q: "[J]ust housekeeping, if you lose on issue preclusion or claim preclusion or res judicata . . . Would you agree that Tracy benefits from that as an officer and employee of the corporation?"  A: "Yes, Your Honor.").  Therefore, for the reasons asserted above on *res judicata*, Mike Tracy's Motion to Dismiss (Doc. #66) is due to be granted.  A separate order will be entered dismissing all claims asserted against Mike Tracy.

legitimate argument that the mothers acted as a sham to prevent the children from recovering for the deaths of their fathers.  Quite to the contrary, the mothers to *Drummond I* were represented by the same attorneys as the children in the present case, exhausted all plausible claims for a liability finding, and stood to suffer (and indeed have suffered) the negative consequences of their unsuccessful suit in *Drummond I.  See* 84 Notre Dame L. Rev. at 1910.  That the children might have been able to recover separate legal damages has nothing to do with the threshold, valiant pursuit for a finding of liability that their mothers prosecuted in *Drummond I.  (See* Doc. #94 at 57-58) ("And it is not true that Plaintiffs believed – or at least took the position that there was no separate legal damages in the first case.  They very much took the position that there was separate legal damages for each and every child, and that's why they made the allegation in the Complaint that they filed in this case.").  This is non-party preclusion in its simplest form.  Therefore, the Motion for Summary Judgment (Doc. #63) is due to be granted on the ground that the non-party children's claims are barred by *res judicata*.

## V.    **Analysis of the Motion to Dismiss.**

The First Amended Complaint filed in this case on October 7, 2011 added four completely new Plaintiffs to the case, Plaintiffs who purport to be children and legal beneficiaries of Locarno and Orcasita.  (Doc. #60, ¶¶ 1, 16, 26-29).  Although Defendants advance five separate grounds for the dismissal of those claims, one is particularly compelling within the context of this decision – that with respect to the issue of liability for their fathers' killings, the interests of the "new" children are identical to those Plaintiffs in *Drummond I* and their claims are therefore barred by *res judicata* – and more specifically the doctrine of non-party preclusion.

Plaintiffs base their argument that non-party preclusion cannot bar the "new" children's claims on the fact that there exists no mother-child relationship between the "new" children and the mothers who were unequivocally involved in *Drummond I*.   That is, the mothers who litigated *Drummond I – i.e.*, the wives of the murdered union leaders – were not, and are not, *the* mothers of the four new Plaintiffs.  (*See* Doc. #68 at 18 ("Indeed, one might draw an inference that they had less affection for each other than perfect strangers."); *see also* Doc. #94 at 105 ("Not only do they not coordinate, they hate each other [as children of the murdered unionists by different mothers].")).

At the end of the analysis, however, Plaintiffs argument amounts to a distinction without difference.  It is not pure biology (*i.e.*, the status of these mothers as the non-biological mothers of the children) which informs this case on the *res judicata* issue.  Rather, it is the fact that *all* of the claims of *all* of the mothers and *all* of the children derive (whether biologically the offspring of the mothers, or not) from the death of decedents, and, most importantly, that the *interests* of the biological children and the "new" children are aligned here.  *See, e.g., Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 620 (1926) ("Identity of parties is not a mere matter of form, but substance."); *see also Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658, 666 (E.D. Tex. 2000) (holding that the plaintiffs, who were beneficiaries of the same decedent, "and all other alleged beneficiaries of [decedent's] estate should be regarded as in privity with the estate and with each other regarding claims of that estate that have been filed by purported representatives of that estate."); *Gorski*, 2012 WL 1512119 at *12 ("[T]he identity of the interest controls, not the nominal identity of the parties.") (internal citations omitted).  In other words, although they are not the biological offspring of the mothers who litigated *Drummond I*, their interests were perfectly aligned with those of the mothers for purposes of attempting to hold Defendants *liable* for the death of the

23

decedent.  *See Taylor*, 553 U.S. at 882, 894.  Therefore, the Motion for Partial Dismissal of the First Amended Complaint (Doc. #62) is due to be granted on *res judicata* grounds.

**VII.    Conclusion.**

Based upon binding precedent, the day-in-court ideal is not absolute.  Although the "children" in this case may not have stood before the court and actually presented their individual damage claims, they have – through the Plaintiffs who actually sued in *Drummond I* – exhausted every possible avenue for relief for the claims they have asserted against these Defendants.  Re-litigation of the issue of liability would constitute a wholesale disregard for the verdict of the jury and the decision of the court in *Drummond I*.  The Motion for Partial Dismissal (Doc. #62) and Defendants' Motion for Summary Judgment (Doc. #63) are due to be granted.  A separate order will be entered dismissing this case in its entirety.

**DONE** and **ORDERED** this _____12th_____ day of September, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE